**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

| | |
|---|---|
| B.T.,<br><br>          PLAINTIFF,<br><br>V.<br><br>SILVER DINER DEVELOPMENT, INC, ET AL.,<br><br>          DEFENDANTS. | Civil Action No.:    2:22-cv-94 |

**DEFENDANT SILVER DINER DEVELOPMENT, LLC'S
MEMORANDUM IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendant Silver Diner Development, LLC ("SDDL" or "Defendant") submits this Motion to Dismiss Plaintiff B.T.'s ("Plaintiff") Complaint. In support, it states as follows.

**I.      Introduction**

In the Complaint, Plaintiff alleges four claims against Silver Diner Development, Inc, Silver Diner Development, LLC, Silver Diner Limited Partnership, and James H. Haliburton ("Defendants"), including assault and battery (Count I), negligent supervision (Count II), breach of duty arising from special relationship (Count III), and negligent retention (Count IV). However, each of Plaintiff's claims against SDDL fails as a matter of law because the statute of limitations has expired. Although Section 8.01-243 of the Code of Virginia allows for the tolling of the statute of limitations, this exception only applies to natural persons, not business entities.

Nonetheless, even if the statute of limitations had not expired against Defendant SDDL, Plaintiff's Complaint fails to state a claim upon which relief can be granted. Regarding the assault and battery claim, Plaintiff fails to plead sufficient facts that supports a finding of

respondeat superior. Although Plaintiff asserts a claim for neglection supervision, the Supreme Court of Virginia, Virginia state courts, and federal courts interpreting Virginia law have repeatedly refused to recognize such a cause of action. Plaintiff also attempts to assert a claim for breach of duty arising from a special relationship, but Plaintiff fails to recognize that such a claim is inapplicable to her as an alleged former of SDDL. Finally, Plaintiff pleads a claim for negligent retention; however, Plaintiff fails to plead that SDDL kept Defendant James H. Haliburton after it was made aware of his alleged misconduct and then Plaintiff experienced the same misconduct. Instead, Plaintiff relies on alleged incidents that happened approximately three years prior to her employment with SDDL, which is insufficient for a negligent retention claim.

## II.      Procedural History

1.      On or about January 19, 2022, Plaintiff B. T. ("Plaintiff") filed a Complaint against Defendants Silver Diner Development, Inc., Silver Diner Development, LLC, Silver Diner Limited Partnership, and James H. Haliburton in the Circuit Court for the City of Virginia Beach, Case No. CL22000207-00. *See* Complaint, which is ECF No. 1-2 at pp. 3-16.

2.      On or about February 1, 2022, Plaintiff served Defendants Silver Diner Development, Inc., Silver Diner Development, LLC, and Silver Diner Limited Partnership (collectively "Silver Diner Defendants"). *See* Returns of Service, which is ECF No. 1-2 at pp. 23-31.

3.      On or about February 22, 2022, Silver Diner Defendants filed a Motion for Extension of Time to File a Responsive Pleading and with the Motion, Silver Diner Defendants included a Proposed Order, which was signed by counsel for Plaintiff and Silver Diner Defendants. *See* Motion for Extension of Time, which is ECF No. 1-2 at pp. 32-35.

4.      On or about February 23, 2022, the Court granted Silver Diner Defendant's Motion for Extension of Time to File a Responsive Pleading. *See* Order Granting Motion for Extension of Time, which is ECF No. 1-2 at pp. 43-44.

5.      On March 1, 2022, Defendant Silver Diner Limited Partnership filed a Plea in Bar arguing that it is not a properly named Defendant and that the statute of limitations for Plaintiff's claims had expired. *See* Silver Diner Limited Partnership's Plea in Bar, which is ECF No. 1-2 at pp. 46-56. In support of the Plea in Bar, Silver Diner Limited Partnership's attached affidavits by Robert T. Giaimo and Christopher Shand.

6.      In their Affidavits, Giaimo and Shand explained that:

a.      In approximately 1987, Robert Giamo and Ype Von Hengst opened the first Silver Diner restaurant location in Rockville, Maryland. *See* Affidavit of Robert T. Giamo at ¶5, which is ECF No. 1-2 at pp. 57-59.

b.      In approximately December 1987, Silver Diner Development, Inc. ("SDDI") filed its Articles of Incorporation with the Virginia State Corporation Commission. *See* Giamo Aff. ¶6, which is ECF No. 1-2 at p. 57.

c.      Shortly thereafter, Silver Diner Limited Partnership ("SDLI") filed a Certificate of Limited Partnership with the Virginia State Corporation Commission. At the time of filing, the General Partner of Silver Diner Limited Partnership was Silver Diner Development, Inc. *See* Giamo Aff. ¶7, which is ECF No. 1-2 at pp. 57-58.

d.      Silver Diner Limited Partnership only operated the first three Silver Diner locations that opened, which were in Rockville, Maryland (approximately February 1989), Laurel, Maryland (approximately September 1990), and Potomac Mills, Virginia (approximately October 1991). *See* Giamo Aff. ¶8, which is ECF No. 1-2 at p. 58.

5

e.      On or about April 21, 1994, Silver Diner, Inc. was incorporated in Delaware under the name Food Trends Acquisition Corporation ("FTAC") and has maintained its principal place of business at 12276 Rockville Pike, Rockville, MD 20852. *See* Giamo Aff. ¶9, which is ECF No. 1-2 at p. 58.

f.      In approximately June 1996, Silver Diner, Inc. acquired all the limited partner interests in Silver Diner Limited Partnership. *See* Giamo Aff. ¶10, which is ECF No. 1-2 at p. 58.

g.      In approximately 2000, Silver Diner Development, Inc. opened a Silver Diner restaurant location in Virginia Beach, Beach ("Silver Diner Virginia Beach"). Specifically, Silver Diner Virginia Beach was located at 4401 Virginia Beach Blvd, Virginia Beach, VA 23462. *See* Giamo Aff. ¶11, which is ECF No. 1-2 at pp. 58.

h.      Upon information and belief, from approximately May 30, 2003, until on or about December 21, 2005, SDDI employed B.T. at the Silver Diner restaurant located at 4401 Virginia Beach Blvd, Virginia Beach, VA 23462. *See* Shand Aff. ¶6, which is ECF No. 1-2 at p. 181.

i.      From approximately April 3, 2002, until February 25, 2004, SDDI employed James Haliburton at the Silver Diner restaurant located at 4401 Virginia Beach Blvd, Virginia Beach, VA 23462. *See* Shand Aff. at ¶7, which is ECF No. 1-2 at pp. 181-182.

j.      Neither B.T. nor Defendant Haliburton were ever employed by Silver Diner Limited Partnership. *See* Shand Aff. at ¶8, which is ECF No. 1-2 at p. 182.

k.      At no point in time did Silver Diner Limited Partnership ever own, operate, or otherwise manage Silver Diner Virginia Beach. *See* Giamo Aff. ¶12, which is ECF No. 1-2 at pp. 58.

l.      Silver Diner Development, Inc. continued to operate Silver Diner Virginia Beach until approximately 2012, when Silver Diner Development, Inc. permanently closed this location. *See* Giamo Aff. ¶11, which is ECF No. 1-2 at pp. 58.

m.      On or about July 24, 2014, Silver Diner Development, Inc. filed Articles of Conversion with the Virginia State Corporation Commission, which converted Silver Diner Development, Inc. to Silver Diner Development, LLC ("SDDL"). As outlined in the "Plan of Entity Conversion", Silver Diner, Inc. was the sole shareholder of Silver Diner Development, Inc. and pursuant to the conversion, Silver Diner, Inc. became the lone member of Silver Diner Development, LLC. *See* Giamo Aff. ¶13, which is ECF No. 1-2 at pp. 58-59.

## III.    Factual Allegations

1.      In the Complaint, Plaintiff asserts admitted hearsay that three years prior to her employment, an unknown male employee, who Plaintiff only identifies as "Male Employee B", "demonstrated a propensity to sexually assault and harass his female co-workers. Without citing any alleged incidents of assault or harassment, Plaintiff generically asserts that this unknown employee engaged in this conduct on several occasions over the summer of 2000, failing to provide any other specificity as to the dates of the alleged occurrences, against two unknown female employees, who are simply identified as "Female Employee B" and "Female Employee C." Compl. ¶16.

2.      Plaintiff alleges admitted hearsay that on an unknown date prior to Plaintiff's employment, Female Employee C complained about Male Employee B's conduct to Bob Giamo, the President of Silver Diner Development, Inc., and Silver Diner Limited Partnership. Compl. ¶17.

3. In addition, Plaintiff asserts admitted hearsay that at some unknown time during an approximate one-year timeframe between June 2000 and May 2001, which was prior to Plaintiff's alleged employment, a different unknown male employee, who Plaintiff only identifies as "Male Employee A", "sexually assaulted and exclaimed vulgar, sexual comments" at an unknown female employee, who Plaintiff simply identified as "Female Employee A." Compl. ¶15.

4. Plaintiff asserts that approximately three years later she began her employment with Silver Diner Development, Inc., and Silver Diner Limited Partnership "as a participant of the extra credit program offered by Princess Anne High School," which would have arguably been an internship program arguably making Princess Anne High School a joint employer, yet Plaintiff fails to identify this indispensable party. Compl. ¶26.

5. Without identifying Defendant Haliburton's job title, job duties, or when he began his employment, Plaintiff identifies Defendant Haliburton as a co-worker at some point during their employment with Silver Diner Development, Inc., and Silver Diner Limited Partnership.

6. Without identifying a date, Plaintiff alleges that Defendant Haliburton picked her up from her home and she consensually drove back with him to Defendant Haliburton's apartment. While at Defendant Haliburton's apartment, Plaintiff alleges, without any specificity, that Defendant Haliburton made sexually suggestive comments and sexually assaulted her. Compl. ¶29.

7. Plaintiff admits this alleged incident did not occur while Plaintiff or Defendant Haliburton were working for any of the corporate Defendants or on the corporate premises.

8.      Again, without identifying any date, Plaintiff alleges that days later, while she was in the pantry at the Silver Diner restaurant, Defendant Haliburton allegedly "accosted her, kissed her, and groped and touched her intimate body parts." Compl. ¶31.

9.      In the Complaint, Plaintiff does not identify what job duties she was engaging in at the time of the alleged indecent or what job duties Defendant Haliburton was engaging in prior to the alleged incident.

10.     Without citing any specific incidents, Plaintiff vaguely asserts that "while they were both on the clock and working", Defendant Haliburton groped and touched Plaintiff's intimate body parts on the company premises every shift they worked together over the course of a year and a half. Compl. ¶32.

11.     Again, without identifying any dates, Plaintiff alleges that while she was on what is arguably an unpaid break from her scheduled worktime, Defendant Haliburton approached her to go to the parking lot for a smoke break, implying that she agreed to do so voluntarily and while in his car, Defendant Haliburton engaged in unspecified sexual contact with Plaintiff. Compl. ¶38.

12.     During these unspecified incidents, Plaintiff does not identify what job duties she was engaging in at the time of the alleged incident or what job duties Defendant Haliburton was engaging in prior to the alleged incident.

13.     In the Complaint, Plaintiff asserts that Defendant Haliburton allegedly told his friend "Mr. Washington", a manager at Silver Diner, about his relationship with Plaintiff. Compl. ¶33. Plaintiff also pleads that Defendant Haliburton also told "Blanche", another manager at Silver Diner, about his relationship with Plaintiff. Compl. ¶37.

14.     Plaintiff never alleges that she complained about Defendant Haliburton to Silver Diner Development, Inc. and/or Silver Diner Limited Partnership during the course of her employment or any time prior to the filing of this complaint nearly 20 years later.

15.     Almost seventeen years after this alleged sexual conduct occurred, Plaintiff asserts that she sought treatment from a mental health professional. Compl. ¶42.

## IV.     Legal Argument For Motion To Dismiss For Lack Of Subject Matter Jurisdiction

### A.     Standard of Review

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a Defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction over the action. *A.W. ex rel Wilson v. Fairfax Cnty. Sch. Bd.*, 548 F. Supp. 2d 219, 221 (E.D. Va. 2008).  The Plaintiff bears the burden of proving that jurisdiction exists in federal court.  *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).  The court should grant a Rule 12(b)(1) motion to dismiss if the material jurisdictional facts are known and the moving party is entitled to prevail as a matter of law. *Morgan v. Rowe Materials*, LLC, No. 3:08cv576, 2009 U.S. Dist. LEXIS 39902, at *3 (E.D. Va. May 11, 2009) (citing *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)).

### B.     SDDL Is Not A Natural Person and A Such, The Statue of Limitations Has Expired

Under Section 8.01-243 of the Code of Virginia, "every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." Va. Code. § 8.01-243(A). However, for claims of sexual abuse occurring during the infancy or incapacity of the person, the claims must "be brought within 20 years after the cause of action accrues." Va. Code. § 8.01-243(D). This time is further extended by Section 8.01-243 of the Code of Virginia, which provides that:

10

> In actions for injury to the person, whatever the theory of recovery, resulting from sexual abuse occurring during the infancy or incapacity of the person, upon the later of the removal of the disability of infancy or incapacity as provided in § 8.01-229 or when the fact of the injury and its causal connection to the sexual abuse is first communicated to the person by a licensed physician, psychologist, or clinical psychologist. As used in this subdivision, "sexual abuse" means sexual abuse as defined in subdivision 6 of § 18.2-67.10 and acts constituting rape, sodomy, object sexual penetration or sexual battery

Va. Code. § 8.01-249 (6). However, this extension of time only applies to natural persons.

In *McConville v. Rhoads*, the Court granted a Defendant's Plea in Bar where the statute of limitations had run. 67 Va. Cir. 392 (Norfolk 2005). In *McConville*, Plaintiff, as a minor, was a parishioner with the Catholic Diocese of Richmond and a student at St. Gregory the Great School. *Id.* at 392. According to Plaintiff, when he was a minor "he was sexually abused and molested by Eileen M. Rhoads. Rhoads was a member of the religious order, the Convent of Sisters, Servants of the Immaculate Heart of Mary." *Id.* The Diocese and Convent of Sisters moved to dismiss on the grounds that the statute of limitations is only with regards to claims against "natural persons." *Id.* at 394. After reviewing the arguments of the Parties, the Circuit Court granted the motion to dismiss by the Diocese and Convent of Sisters. In support the Circuit Court explained:

> Article IV, § 14, paragraph 4, of the Virginia Constitution uses the phrase "natural person" twice. Virginia follows the rule that "the words of a constitution are to be understood in the sense in which they are popularly employed," and "every word employed in the Constitution is to be expounded in its plain, obvious, and common sense meaning, unless the context furnishes some ground to control, qualify, or enlarge it." *Quesinberry v. Hull,* 159 Va. 270, 274-75, 165 S.E. 382, 383 (1932). A "natural person" is defined as "a person produced by nature — a human being." *Armstrong v. NEWVA Enterprises,* 23 Va. Cir. 352, 355 (1991) (involving Virginia Residential Landlord and Tenant Act). According to this definition, the Diocese and Convent of Sisters are not natural persons.

> Even though Virginia Code § 8.01-249(6) does not include the phrase natural person, the statute should be construed in light of the enabling constitutional amendment, Article IV, § 14, paragraph 4. "No act of the legislature . . . should be so construed as to bring it into conflict with constitutional provisions." *Dean v. Paolicelli,* 194 Va. 219, 227, 72 S.E.2d 506, 511 (1952). The reasonable interpretation of the language in the statute based on the enabling amendment is that it only pertains to individuals. In addition, statues in derogation of the common law are to be narrowly construed. *Hyman v. Glover,* 232 Va. 140, 143, 348 S.E.2d 269, 271, 3 Va. Law Rep. 607 (1986). A narrow construction of the statute is that it only applies to natural persons.
>
> The Virginia General Assembly would not have used the phrase "natural person" twice in the enabling amendment to the constitution if it did not intend to restrict the application of the tolling of the statute of limitations to natural persons. The Court finds that the statute of limitations has run on Plaintiff's ability to directly sue the Diocese and the Convent of Sisters.

*Id.* at 394-95.

The Supreme Court of Virginia affirmed this position in *Kopalchick v. Catholic Diocese of Richmond*, 274 Va. 332 (2007) ("Because the diocese is not a 'natural person,' Code § 8.01-249(6) has no effect upon its constitutionally protected right to rely on the bar of the statute of limitations.").

Consequently, the statute of limitations has expired as to non-natural persons, and as such, all claims against Defendant SDDL must be dismissed.

## V.   Legal Argument For Motion To Dismiss For Failure To State A Claim Upon Which Relief Can Be Granted

### A.   Standard of Review

To survive a motion to dismiss under Federal Rule 12(b)(6), a Plaintiff must "provide the grounds of his entitlement to relief," including "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint

may withstand a motion to dismiss if it contains plausible factual allegations that demonstrate something more than the "sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. at 668 (2009). Although a court evaluating a defendant's motion to dismiss must assume that all facts alleged in the complaint are true, the court need not accept unsupported legal allegations. *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Nor must it accept legal conclusions couched as factual allegations. *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Conclusory assertions fail to meet the requirements of Rule 12(b)(6). *See Giarratano*, 521 F.3d at 304.

To pass muster under Rule 12(b)(6), the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555. (emphasis added) ("[T]he pleading must contain something more…than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."). To survive a Rule 12(b)(6) motion to dismiss, Plaintiff must plead sufficient facts, and must plead "more than labels and conclusions" and more than "a formulaic recitation of the elements" of a claim. *Twombly*, 550 U.S. at 555–56. As set forth below, Plaintiff falls short of satisfying this pleading standard and Plaintiff's claims should be dismissed.

### A.   Count I:  Plaintiff Fails To Establish Liability Against The Defendant Under A Theory Of *Respondeat Superior*

Arguably Count I of the Complaint is premised upon on a theory of *respondeat superior* liability, although Plaintiff fails to assert specifically or sufficiently the same. Without establishing *respondeat superior* liability, Plaintiff's claim for assault and battery against Defendant SDDL fails.

Under the theory of *respondeat superior*, "an employer is liable for the tortious act of his

employee if the employee was performing his employer's business and acting within the scope of his employment." *Kensington Assoc. v. West*, 234 Va. 430, 432 (Va. 1987) (citing *McNeil v. Spindler*, 191 Va. 685, 694 (Va. 1950)).  To be "within the scope of the employment," the act must have been:

> (i)    it was expressly or impliedly directed by the employer, or is naturally incident to the business, and
>
> (ii)   it was performed, although mistakenly or ill-advisedly, with the intent to further the employer's interest, or from some impulse or emotion that was the natural consequence of an attempt to do the employer's business, 'and did not arise wholly from some external, independent, and personal motive on the part of the [employee] to do the act upon his own account.'"

*Id.* (citing *Broaddus v. Standard Drug Co.*, 211 Va. 645, 653 (1971); *Cary v. Hotel Rueger, Inc.*, 195 Va. 980, 984, 81 S.E.2d 421, 423 (1954); *Tri-State Coach Corp. v. Walsh*, 188 Va. 299, 307 (1948); *Davis v. Merrill*, 133 Va. 69, 77 (1922)).

Once "an employer-employee relationship has been established" by the Plaintiff, the Defendant bears the burden of proving that the employee "was not acting within the scope of his employment when he committed the act complained of."  *Id.* at 432–33.  Consistently, the Supreme Court of Virginia has held that "motive of the employee in committing the act complained of is not determinative of whether it took place within the scope of the employment relationship."  *Gina Chin & Assocs. v. First Union Bank*, 260 Va. 533, 543 (2000).  Instead, "it is merely a factor to be considered in making that determination."  *Id.* at 543–44.  Ultimately, the Court asks, "whether the service itself, in which the tortious act was done, was within the ordinary course of such business."  *Id.* at 543.

Liability against the employer "may be imposed, for example, where a supervisor is engaged in workplace duties or functions."  *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 713 (E.D. Va. 2004).  However, liability may NOT "be imposed solely on allegations that the

14

harassment took place at the workplace and during work hours." *Id. (emphasis added).* Instead, "*respondeat superior* is applicable only where the facts allege that the perpetrator committed the assaults while performing his job." *Clehm v. BAE Sys. Ordinance Sys.*, Civil Action No. 7:16-CV-0012, 2016 U.S. Dist. LEXIS 95827, at *6 (W.D. Va. July 22, 2016).

In *Blair v. Defender Services*, the Fourth Circuit Court of Appeals stated that "the simple fact that an employee is at a particular location at a specific time as a result of his employment is not sufficient to impose *respondeat superior* liability on the employer." 386 F.3d 623, 627 (4th Cir. 2004). In *Blair*, the Plaintiff alleged that as she was leaving the restroom when James Harris, who was working as janitor, "grabbed her by her neck," "pushed her back into the bathroom," straddled her, and used both hands to strangle her. *Id.* at 625. The Court concluded that "[w]hen Harris embarked on independent acts to attack Blair, he clearly acted outside the scope of his employment." *Id.* at 627. As a result, the Court held "that this act was so great a deviation from [the Defendant's] business" that the District Court correctly granted the Defendant's motion as to *respondeat superior* liability claim. *Id.* at 628.

Similarly, in *Lacasse v. Didlake, Inc.*, the Plaintiff, a janitor for the Defendant, alleged that the Project Manager "found her in a supply closet near the end of her shift and kissed her." No. 16-1896, 2018 U.S. App. LEXIS 626, at *3 (4th Cir. Jan. 10, 2018) (per curiam). Ultimately, the Court held that "Evo's alleged acts, if true, merely would have occurred at his place of employment, and that is insufficient to establish Didlake's *respondeat superior* liability under Virginia law." *Id.* at *12. In support, the Court noted that "[t]he alleged sexual harassment deviated so significantly from Evo's expected duties as a Project Manager that it could not have occurred in the ordinary course of Didlake's business." *Id.* at *11. More importantly, "Evo neither gained nor possessed knowledge relevant to the assault through the performance of his

15

job duties." *Id.*

The bare, vague allegations in the Complaint are insufficient to show that Defendant Haliburton was acting in the scope of his employment. At most, the Plaintiff establishes that an alleged assault occurred on Defendant Silver Diner Development LLC's premise while the Plaintiff was working. As case law has consistently held, this is insufficient to establish liability under a theory of respondent superior.

Moreover, because the alleged act was not part of Defendant Haliburton's job duties this case is easily distinguishable from the cases in which Courts have found employers liable for the tortious sexual acts of their employees. *See Heckenlaible v. Va. Peninsula Reg'l Jail Auth.*, 491 F. Supp. 2d 544, 551 (E.D. Va. 2007) (finding that "Steele's duties as a correctional officer required him to observe inmates in the shower, and the alleged sexual assault occurred after he observed Heckenlaible showering and during a 'cell search' thereafter.").

In *Plummer v. Center Psychiatrists*, the Plaintiff alleged that "Dr. Roque Gerald, a licensed clinical psychologist, was employed by the defendant, Center Psychiatrists," and that "Gerald provided therapy and counseling services to the plaintiff." 252 Va. 233, 234, 476 (1996). While counseling the Plaintiff, the Dr. Gerald sexually assaulted the Plaintiff. *Id.* Ultimately, the Court found that the psychologist "act was committed while he was performing his duties as a psychologist in the execution of the services for which he was employed, in this instance, counseling and therapy," and that "Gerald's education, experience, and knowledge of the plaintiff, who was depressed and had suicidal ideations, enabled him '[to overcome] her will so that she was unable to act with volition.'" *Id.* at 237.

In this case, the Plaintiff fails to establish that the alleged assault occurred while Defendant Haliburton was engaging in his job duties, nor can the Plaintiff ever make this

16

showing. Plaintiff does not even identify Defendant Haliburton's job title or job duties. Since the Plaintiff cannot establish that these acts occurred within the scope of Defendant Haliburton's employment, Defendant SDDL is not vicariously liable. Accordingly, the Court should grant Defendant's Motion to Dismiss as to Count I of the Complaint.

## B.      Count II:  Virginia Does Not Recognize a Claim For Negligent Supervision

Although Plaintiff attempts to set forth a claim for negligent supervision, Plaintiff's claim must be dismissed because Virginia law does not recognize a claim for negligent supervision. As the Supreme Court of Virginia explained in *Chesapeake & Potomac Tel. Co. v. Dowdy*, "[t]here can be no actionable negligence unless there is a legal duty, a violation of the duty, and a consequent injury." 235 Va. 55, 61 (1988). Turning to the question of whether Virginia recognizes a claim for negligent supervision, the Supreme Court of Virginia went on to hold that "[i]n Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not create one here." *Id.*

Since the Supreme Court of Virginia's decision in *Dowdy*, the Virginia Supreme Court reaffirmed its position in an unpublished opinion in *Williams v. Shall*, No. 120889, 2013 Va. Unpub. LEXIS 1, *5 (Va. June 6, 2013) and again in a published opinion in *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 630 (2019). Following the Supreme Court's positions, Virginia state courts and federal courts interpreting Virginia law have refused to recognize such a cause of action. *See Parrish v. Am. Airlines, Inc.*, 97 Va. Cir. 271, 277 (Norfolk 2017) (collecting cases and explaining that "It has been repeatedly concluded that Virginia courts do not recognize a claim of negligent supervision. The Virginia Supreme Court in *Chesapeake & Potomac Telephone Co. v. Dowdy* held that '[i]n Virginia, there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not

17

create one here.' Despite the limiting language in the Virginia Supreme Court's holding, Virginia courts 'have routinely interpreted the decision to hold that negligent supervision is not actionable in Virginia.'"); *see also Jones v. Kroger Ltd. P;ship*, 80 F. Supp. 3d 709, 714-15 (W.D. Va. 2015) ("In *Dowdy*, the Supreme Court of Virginia held that an employer has no duty to supervise its employees to prevent the excessive criticism of one employee by another. *Id.* The vast majority of courts have 'interpreted *Dowdy* as foreclosing any cause of action for negligent supervision in Virginia.' This court cannot create a duty to supervise where Virginia courts have not. Thus, to the extent that Jones's negligence claim is based on the defendants' negligent supervision of Gammon, that claim must be dismissed for failure to state a claim."); *Elrod v. Busch Entm't Corp.*, No. 4:09cv164, 2010 U.S. Dist. LEXIS 139988, at *19-21 (E.D. Va. Dec. 13, 2010) (collecting cases refusing to recognize a claim for negligent supervision and further stating, "This court cannot create a duty to supervise where Virginia courts have not done so. Therefore, given that not a single Virginia court has ever found a duty to supervise, BEC's 12(b)(6) Motion to Dismiss Count III of the Amended Complaint alleging negligent supervision should be GRANTED.").

Accordingly, the Court should grant Defendant SDDL's Motion to Dismiss Count II of the Complaint.

### C.    Count III:  Virginia Does Not Recognize A Claim For Breach Of Duty Arising From A Special Relationship With Plaintiff

In the Complaint, Plaintiff purports to pursue a claim for "breach of duty arising from special relationship".  However, Plaintiff misapplies this cause of action to the allegations in the Complaint. Based on the allegations plead, it appears that Plaintiff is attempting to cast a negligent retention claim as a claim for breach of dusty arising from special relationship.

In *A.H. v. Church of God in Christ, Inc.*, the Supreme Court of Virginia explained:

18

"As a general rule, there is no duty to warn or protect against acts of criminal assault by third parties. This is so because under 'ordinary circumstances, acts of assaultive criminal behavior by third persons cannot reasonably be foreseen.'" *Terry v. Irish Fleet, Inc.*, 296 Va. 129, 135, 818 S.E.2d 788 (2018) (quoting *A.H. v. Rockingham Publ'g Co.*, 255 Va. 216, 222, 495 S.E.2d 482 (1998)). "Indeed, 'in only rare circumstances has this Court determined that the duty to protect against harm from third party criminal acts exists.'" *Id.* (alteration omitted) (quoting *Commonwealth v. Peterson*, 286 Va. 349, 359, 749 S.E.2d 307 (2013)).

Two such rare circumstances exist that constitute exceptions to this general rule of non-liability. The first involves a defendant who expressly assumes a duty to protect another from criminal harm. […]

The second rare exception to the general rule involves a duty not assumed but imposed. The common law recognizes a duty to protect when a special relationship exists "(1) between the defendant and the third person which imposes a duty upon the defendant to control the third person's conduct, or (2) between the defendant and the plaintiff which gives a right to protection to the plaintiff." *Brown v. Jacobs*, 289 Va. 209, 215, 768 S.E.2d 421 (2015) (alteration and citation omitted); *Burns*, 283 Va. at 668-69 (citation omitted); Commonwealth v. Burns, 273 Va. 14, 18, 639 S.E.2d 276 (2007) (citation omitted); *Burdette v. Marks*, 244 Va. 309, 312, 421 S.E.2d 419, 9 Va. Law Rep. 273 (1992). The duty is not absolute, however. It only exists when the defendant could have foreseen the need "to take affirmative action to protect [the plaintiff] from harm." *Burns*, 283 Va. at 669 (citation omitted).

[…]

In *A.H.*, we recognized a special relationship between an employer and an employee "with regard to the employer's potential duty of protecting or warning an employee." 255 Va. at 220 (citing Restatement (Second) of Torts § 302B cmt. e(B) (1965)). **Focusing our analysis on the facts of that case, we addressed this duty only in the context of protecting an employee <u>from a third party's intentional or criminal acts</u>**, not from a third party's negligence — as our reliance on a Restatement provision with this limited scope implies. *See* Restatement (Second) of Torts § 302B & cmt. e(B) (applying the duty to protect an employee only in the context of intentional or criminal conduct of a third party).

19

> **Though we have recognized a limited special-relationship duty on the part of an employer to protect an employee against a third party's intentional or criminal conduct, <u>we have not to date recognized the inverse: a special-relationship duty on the part of the employer to control his employee so as to prevent the employee from harming third parties</u>. We are aware that Restatement (Second) of Torts § 317 describes a duty on the part of an employer to control his employee "to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them." Our precedent, however, has held that an employer has no general duty to supervise one employee to protect another employee from intentional or negligent acts. See infra at 21 (citing, inter alia, *Chesapeake & Potomac Tel. Co. of Va. v. Dowdy*, 235 Va. 55, 61, 365 S.E.2d 751, 4 Va. Law Rep. 1978 (1988)). It seems incongruent that an employer would owe a duty to third parties that he does not owe to his own employees — particularly given that the interests of third parties are protected under Virginia law by traditional respondeat superior principles and the torts of negligent hiring and negligent retention**, *see infra* at 17-20, 24-26.

297 Va. 604, 618, 621-22, 831 S.E.2d 460, 470 (2019) (emphasis added). Applying *Church of God in Christ, Inc.*, the Eastern District of Virginia dismissed a claim where the negligent party was an employer and in support, explained:

> Ms. Hellebuyck claims Defendant owed Plaintiff a special duty as her employer but cites to inapposite cases and standards where an employer has an enhanced duty to protect its employees from criminal acts or negligence of third parties. **In the instant case, the alleged negligent party is the employer, not a third party, rendering the following irrelevant to Plaintiff's case**:
>
>> The employer-employee relationship involves additional qualifications. In *A.H. [v. Rockingham Publishing Co., Inc.*, 255 Va. 216, 495 S.E.2d 482 (Va. 1998)], we recognized a special relationship between an employer and an employee "with regard to the employer's potential duty of protecting or warning an employee." 255 Va. at 220 [] (citing Restatement (Second) of Torts § 302B cmt. e(B) (1965)). Focusing our analysis on the facts of that case, we addressed this duty only in the context of *protecting an employee from a third party's intentional or criminal acts, not from a third party's negligence* — as

20

our reliance on a Restatement provision with this limited scope implies. *See* Restatement (Second) of Torts § 302B & cmt. e(B) (*applying the duty to protect an employee only in the context of intentional or criminal conduct of a third party*).

*A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 831 S.E.2d 460, 470 (Va. 2019) (emphases added). […]

The upshot is that this is effectively a common law negligence allegation because there is no special relationship under Virginia law as it applies to these facts.

*Hellebuyck v. Gucci Am.*, No. 1:19-cv-1556, 2020 U.S. Dist. LEXIS 254243, at *12-14 (E.D. Va. July 9, 2020) (emphasis added).

As the defendant argued in *Hellebuyck*, the cases analyzing the "special relationship" between employers and their employees address whether a plaintiff may assert a claim against the employer for negligence in failing to warn and/or protect the employee from the acts of *a third party*. Here, Plaintiff does not allege that she was injured by the conduct of a *third party* whom Defendant SDDL had a duty to protect Plaintiff from, but rather, she alleges that Defendant SDDL had a duty to protect her from an employee who intentionally inflicted harm upon her, which falls outside the scope of the claim for breach of duty arising from a special relationship. Accordingly, Count III of the Complaint should be dismissed.

### D.    Count IV:  Plaintiff Fails To Allege Facts To Support A Claim Of Negligent Retention

In the Complaint, the Plaintiff fails to allege specific facts which, if true, alerted or should have alerted the Defendant SDDL that Defendant Haliburton had a propensity for sexually assaulting women with whom he encountered during the course of his employment.

Unlike the theory of *respondeat superior*, "negligent hiring [and retention] is a doctrine of primary liability" and allows a Plaintiff "to recover in circumstances when *respondeat*

21

*superior's* 'scope of employment' limitation protects employers from liability." *Interim Pers. of Cent. Va. v. Messer*, 263 Va. 435, 441 (2002); *Doe v. Harris, No*. CL 5544, 2001 Va. Cir. LEXIS 529, at *23 (Amherst Cnty. Apr. 11, 2001).

In *Southeast Apartments Management, Inc. v. Jackson*, the Supreme Court of Virginia explained that negligent hiring "[l]iability is predicated on the negligence of an employer in placing a person with known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others." 257 Va. 260 (1999). While negligent retention is a "cause of action…based on the principle that an employer…is subject to liability for harm resulting from the employer's negligence in retaining a dangerous employee who the employer knew or should have known was dangerous and likely to harm." *Id.* at 261.

As the Court noted in *Berry v. Scott & Stringfellow*, "[w]hat separates one cause of action from the other concerns the issue of *when* an employer actually or constructively learns of the employee's dangerous propensities." 45 Va. Cir. 240, 247 (Norfolk 1998) (emphasis added). When "an employer negligently fails to take note of a potential employee's propensity to later act tortiously, the analysis centers only upon the decision to hire." *Id.* However, "[i]f an employer, *after* actual or constructive knowledge of an existing employee's propensity to act tortiously, negligently fails to take note of such propensity and to alleviate the negative impact on the workplace, the analysis centers only upon the decision to retain." *Id.* (emphasis added) Accordingly, "the only difference between these claims is the *timing* of the employer's actual or imputed awareness of the possibility of dangerous behavior by the employee." *Beach v. McKenney*, 82 Va. Cir. 436, 443 (Charlottesville 2011) (emphasis added). Consequently, "a

22

claim of negligent retention…requires a plaintiff to allege specific facts that, if true, alerted or should have alerted a reasonable employer that the employee posed a threat." *Id.*

Fatal to Plaintiff's claim is the absence of any allegation that Defendant SDDL knew or should have known that the Defendant Haliburton had a propensity to engage in sexually harassing behavior. Instead, in the Complaint, Plaintiff makes vague allegations regarding unknown and unspecified individuals. Specifically, Plaintiff alleges:

> 15. Upon information and belief, from June 2000 through May 2001 a male employee ("Male Employee A") at the Subject Silver Diner sexually assault and exclaimed vulgar, sexual comments at a female co-worker ("Female Employee A") including rubbing his genital area against the female employee and asking if she would like to feel "this" insider her.
>
> 16. Upon information and belief, before the summer of 2000 a different male employee ("Male Employee B") also demonstrated a propensity to sexually assault and sexually harass his female co-worker at the Subject Silver Diner on several occasions involving Female Employee B and Female Employee C.
>
> 17. Upon information and belief, Female Employee C complained of and reported Male Employee B's sexually harassing conduct to the President of Silver Diner Inc. and Silver Diner Ltd. Bob Giamo.

Compl. ¶¶15-17. Missing from the Complaint is any allegation that any employee complained of Defendant Haliburton's conduct to Defendant SDDL. Moreover, Plaintiff fails to allege that Defendant Haliburton was even employed during the time between 2000 and 2001. In fact, as discussed in the Motion to Strike that was filed contemporaneously, Defendant Haliburton was not even employed by Defendant SDDL when these events allegedly occurred. Plaintiff cannot impute liability by using these prior incidents to establish an alleged known propensity on the part of Defendant Haliburton when Female Employee A, Female Employee B, or Female Employee C never complained about his behavior to Defendant SDDL.

23

A cause of action for negligent retention *only applies* when the employer had *prior knowledge*. Plaintiff has not alleged a single fact or act taken by Defendant Haliburton "*during his employment but before the altercation[s] at hand*" that would have put the Defendant SDDL on notice. *See Beach*, 82 Va. Cir. 444 (emphasis added). Instead, Plaintiff attempts to assert that Defendant Haliburton made other Silver Diner employees aware of his alleged relationship with Plaintiff. Compl. ¶¶33, 37. What Plaintiff fails to assert is that prior to the first time Defendant Haliburton allegedly sexual assaulted her, Defendant SDDL knew that Defendant Haliburton had a known propensity to commit such an act because another employee already complained and that nonetheless Defendant SDDL continued to employee him, or in the alternative, that Plaintiff complained of the alleged sexual assault to Silver Diner and that after complaining about Defendant's Haliburton's alleged conduct, he remained employed and continued to engage in such acts.

A negligent retention claim will not survive when an employer does not have actual or constructive knowledge and the employer swiftly investigated the matter and took appropriate action. *Heckenlaible v. Va. Peninsula Reg'l Jail Auth.*, 491 F. Supp. 2d 544, 554 (E.D. Va. 2007); *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 269 (4th Cir. 2001). Negligent retention "analysis centers only upon the decision to retain" an employee only "*after actual or constructive knowledge* of an existing employee's propensity to act tortiously, negligently fails to take note of such propensity and to alleviate the negative impact on the workplace." *Berry*, 45 Va. Cir. at 247. The Complaint fails to allege such a failure by Defendant SDDL. Accordingly, the Court should grant Defendant's Motion to Dismiss as it pertains to Count IV of the Complaint against Defendant SDDL.

24

## VI.    <u>Conclusion</u>

For the foregoing reasons, Defendant Silver Diner Development, LLC respectfully requests that the Court grant its Motion to Dismiss.

Dated:  March 10, 2022                    Respectfully submitted,

**SILVER DINER DEVELOPMENT, LLC**

By: _____/s/_____
Kristina H. Vaquera, Esq. (VSB No. 43655)
Milena Radovic, Esq. (VSB No. 91000)
Jackson Lewis, P.C.
500 E. Main Street, Suite 800
Norfolk, Virginia 23510
Telephone:    (757) 648-1445
Facsimile:    (757) 648-1418
kristina.vaquera@jacksonlewis.com
milena.radovic@jacksonlewis.com
*Counsel for Defendant  Silver Diner Development, LLC*

25